IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIV. NO. 20-00434 JMS-KJM |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 135 |
| vs. | |
| EDDIE V. AGUINALDO; IMELDA S. AGUINALDO, ET AL., | |
| Defendants. | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 135

### I. INTRODUCTION

In this tax case, Plaintiff United States of America (the "government") moves for summary judgment on its claims to reduce to judgment unpaid federal tax assessments and penalties against pro se Defendant Eddie V. Aguinaldo ("Mr. Aguinaldo") and pro se Defendant Imelda S. Aguinaldo ("Mrs. Aguinaldo") (collectively, the "Aguinaldos") for various periods stretching from 2007 to 2014. ECF No. 135; ECF No. 135-1 (PageID.928–30).  The government also moves for summary judgment on its claim to foreclose its federal tax liens on the Aguinaldos' real property.  ECF No. 135.

Two weeks after the government filed its Motion for Summary Judgment, *id.*, the Aguinaldos filed an "Answer to First Amended Complaint," ECF No. 153.  Despite referencing the now-superseded "First Amended Complaint," the Aguinaldos' filing is responsive to the subject matter of the operative Third Amended Complaint and the Motion for Summary Judgment. *Compare* ECF No. 110 (Third Amended Complaint reciting allegations in 79 numbered paragraphs), *with* ECF No. 153 (Aguinaldos' "Answer" generally denying allegations in numbered paragraphs 1 through 80, and asserting "Joint Affirmative Defense[s]" to the alleged tax liability); *see also* ECF No. 154 (the government's Reply in Support of Motion for Summary Judgment treating the Aguinaldos' "Answer" as a response to the Motion); ECF No. 149 (minutes recording court's denial of motion for default judgment, and summarizing history of the complaints).  The Aguinaldos have not otherwise responded to the Motion, and the court apprised the Aguinaldos of the consequences of not opposing the government's Motion. *See* ECF No. 137 ("Notice to Pro Se Litigants regarding opposition to motions for summary judgment").  Given those facts, the court construes the Aguinaldos' "Answer," ECF No. 153, as an Opposition to the Motion for Summary Judgment, and the court reviews the government's Motion and Reply, ECF No. 154, in light of the Opposition.

Having reviewed the Motion, the Opposition, and the Reply, the court decides the Motion without a hearing pursuant to Local Rule 7.1(c).  The Motion is GRANTED in part and DENIED in part for the reasons provided below. Specifically, the court grants summary judgment in favor of the government on its tax-assessment-and-penalties claims but denies summary judgment on the government's foreclosure claim.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *accord Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323).  "If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided

3

in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), and citing Fed. R. Civ. P. 56(e)). The non-moving party cannot simply "rest upon the mere allegations or denials of [its] pleading." *Anderson*, 477 U.S. at 248 (citation omitted). Nor can it defeat summary judgment by relying solely on conclusory allegations unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Unanswered requests for admission, or untimely and deficient responses to the same, are deemed admitted under Federal Rule of Civil Procedure 36(a)(3) and may be relied on as a basis for granting summary judgment. *See Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007).

### III. **DISCUSSION**

The court has subject matter jurisdiction over this case, contrary to the Aguinaldos' suggestion, *see* ECF No. 153, ¶ 84 (PageID.1753).  The government brings claims to reduce to judgment allegedly unpaid federal tax assessments and penalties imposed against the Aguinaldos by the government's Internal Revenue Service ("IRS"), pursuant to Section 7401 of the Internal Revenue Code, 26 U.S.C. § 7401.  *See* ECF No. 110, ¶ 2 (PageID.661).  The court has subject matter jurisdiction over those claims because they arise under an "Act of Congress providing for internal revenue," 28 U.S.C. § 1340, and because they are brought in a "civil action[] . . . commenced by the United States," *id.* § 1345.  For the same reasons, the court has subject matter jurisdiction over the government's foreclosure, which is brought pursuant to Section 7403 of the Internal Revenue Code, 26 U.S.C. § 7403.  *See also id.* § 7403(a) ("[T]he Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property . . . .").

The court has personal jurisdiction over the Aguinaldos, also contrary to their suggestion, *see* ECF No. 153, ¶ 84 (PageID.1753).  The Aguinaldos reside within the judicial District of Hawaii, *see* ECF No. 153, ¶¶ 1–2 (PageID.1739–40), and the tax liabilities alleged in this case arose, if at all, within the District of

Hawaii. *See, e.g.*, ECF No. 135-19 (PageID.1359) (Aguinaldos' joint income-tax return for 2010 reporting a home address in Honolulu, Hawaii); ECF No. 135-22 (2007 tax return for Mr. Aguinaldo's sole proprietorship reporting a principal address in Honolulu, Hawaii). Those facts are sufficient for personal jurisdiction in a tax-liability case. *See United States v. Kubon*, 2019 WL 3387651, at \*1 (N.D. Cal. July 10, 2019), *aff'd*, 796 F. App'x 449 (9th Cir. 2020).

As for substance, the court first addresses—and grants in full—the government's request for summary judgment on its tax-assessment-and-penalties claims. Those claims involve allegedly unpaid (1) income-tax assessments and related penalties imposed against the Aguinaldos; (2) employment- and unemployment-tax assessments, and related penalties, imposed against Mr. Aguinaldo as a sole proprietor; and (3) trust fund recovery penalties imposed against Mr. Aguinaldo as a responsible business operator under 26 U.S.C. § 6672. The court then addresses and denies the government's request for summary judgment on its claim to foreclose tax liens on the Aguinaldos' real property.

## A.     Reduce to Judgment Federal Tax Assessments and Penalties

In an action to collect federal taxes, the government bears the initial burden of proving the amount owed and that notice of the amount owed was properly given under 26 U.S.C. § 6303. *See Palmer v. IRS*, 116 F.3d 1309, 1312 (9th Cir. 1997). That initial burden can be met by presenting IRS tax assessments.

6

*United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983) ("Normally, [a] presumption of correctness attaches to the assessment, and its introduction establishes a prima facie case."). The IRS's Certificates of Assessments and Payments ("Forms 4340") are highly probative of liability and, in the absence of contrary evidence, are sufficient to establish that the government assessed a tax debt and gave notice of the debt, and a demand for payment, to the taxpayer. *United States v. Lindsey*, 2013 WL 3947757, at *4 (D. Haw. July 30, 2013) (citing *Huff v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993)); *see also Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("Form 4340 is admissible as a public record even though generated by a computer."). "Where an assessment is based on more than one item, the presumption of correctness attaches to each item." *Stonehill*, 702 F.2d at 1294.

When supported by a minimal factual foundation, the IRS's Form 4340 assessments are entitled to a presumption of correctness, thus shifting the burden to the taxpayer to show the assessment is incorrect. *See id.* at 1293. But if the taxpayer can show that the IRS's determination is arbitrary, excessive, or without foundation, the burden of proof shifts back to the government. *Palmer*, 116 F.3d at 1312.

### 1.   *Income-Tax Assessments and Related Penalties*

The government requests summary judgment on its claim to reduce to judgment unpaid income-tax assessments and related penalties imposed against the Aguinaldos.  ECF No. 135-1 (PageID.910–12).  The income-tax years relevant to that request are 2007–2010, 2013, and 2014.  *See id.* (PageID.900–02).  The Aguinaldos jointly filed their federal income-tax returns for each of those years. ECF No. 135-3, ¶ 1 (PageID.953) (government's Concise Statements of Facts, "CSF") (citing ECF Nos. 135-16, 135-17, 135-18, 135-19, and 135-20, the Aguinaldos' joint tax returns for the years 2007, 2008, 2009, 2010, and 2013, respectively) (also citing ECF No. 135-21, an IRS Tax Return Database Page transcript reflecting information from the Aguinaldos' jointly filed 2014 tax return).  But at least for the 2007–2010 years, the simplicity flowing from the Aguinaldos' joint returns is offset by the complexity of Mrs. Aguinaldo's petition for innocent spouse, which prompted the IRS to create "mirrored modules" for the Aguinaldos, i.e., separate tabulations for the amounts owed and paid by Mr. and Mrs. Aguinaldo.  *See id.*, ¶ 5 (PageID.953) (citing ECF No. 135-4, declaration of pseudonymous IRS Internal Revenue Officer Venice Lim, "Lim Decl.").

### a.   *2013 and 2014 income tax*

Starting with the less complicated 2013 and 2014 years, the government is seeking joint and several liability against the Aguinaldos for unpaid

income-tax assessments and related penalties for those two years.  ECF No. 135-1
(PageID.929).  In support of its request for summary judgment, the government
produces Forms 4340 showing initial assessments, along with accrued interest and
various penalties (e.g., late filing penalty), resulting in total balances of $18,579.21
and $338.44 for 2013 and 2014, respectively, as of November 9, 2020.  ECF No.
135-9 (PageID.1045–53).  Those balances were later updated to $20,286.51 and
$369.54, as reflected by a June 8, 2022 IRS Integrated Data Retrieval System
("IDRS") Report.  ECF No. 135-13 (PageID.1225, 1227); *see also* Lim Decl., ECF
No. 135-4, ¶¶ 5–13 (PageID.963–67) (describing how IDRS Reports and the
underlying computer code "make up-to-date interest calculations for balances
owed," and declaring that the IDRS Reports and the underlying code are sound and
accurate).  Further, the government provides a declaration from IRS Officer Lim
supporting the accuracy of the $20,286.51 and $369.54 debts, ECF No. 135-4, ¶ 13
(PageID.967), and Mr. Aguinaldo admitted to owing the initial assessments for
both 2013 and 2014, *see* ECF No. 135-35, ¶¶ 23–27 (PageID.1519–20), as did
Mrs. Aguinaldo, *see* ECF No. 135-36, ¶¶ 26–30 (PageID.1555–56).[1]

---

[1] The cited ECF Nos. 135-35 and 135-36 are the government's requests for admissions
from Mr. Aguinaldo and Mrs. Aguinaldo, respectively.  The court previously ruled that those
requests are deemed admitted given Mr. and Mrs. Aguinaldo's failure to respond.  ECF No. 106,
¶¶ 4–5 (PageID.639–40) (citing and applying Fed. R. Civ. P. 36(a)(3)).  For the remainder of this
order, the court cites to only the government's requests for admissions when indicating an
admission by Mr. or Mrs. Aguinaldo.

The government's evidence of income-tax debts for 2013 and 2014—which includes Form 4340 assessments that are entitled to a presumption of correctness—is sufficient to satisfy its initial burden of proving the amounts owed and that the government gave requisite notice of the amounts owed to the Aguinaldos. The Aguinaldos have failed to provide any evidence rebutting the government's initial showing. *See* ECF No. 153. Their general denials, *id.*, ¶¶ 1–80 (PageID.1735–39), are not sufficient. *See Anderson*, 477 U.S. at 248. Nor are their conclusory assertions, *e.g.*, ECF No. 153, ¶ 26 (PageID.1743). *See Taylor*, 880 F.2d at 1045. There is thus no genuine issue of material fact as to the Aguinaldos' income-tax liabilities for 2013 and 2014[2]—the Aguinaldos are jointly and severally liable for $20,286.51 and $369.54 for those years, respectively, plus any interest and statutory additions as permitted by law from June 8, 2022, until paid.[3]

---

[2] The ten-year statute of limitations for collections, 26 U.S.C. § 6502(a)(1), does not preclude liability for the 2013 and 2014 income-tax debts. The limitations period began to run on the "assessment [date] of the tax[es]," *id.*, and the government's evidence establishes that the Aguinaldo's income taxes for 2013 and 2014 were assessed on December 28, 2015, and November 23, 2015, respectively, dates less than ten years from the filing date of this case, October 9, 2020. *See* ECF No. 135-9 (PageID.1046, 1050).

[3] *See* 26 U.S.C. §§ 6601(a), 6601(e)(2)(A), and 6662; *Purcell v. United States*, 1 F.3d 932, 943 (9th Cir. 1993) (describing the "government's entitlement to interest by section 6601(e)(2)(A) of the Tax Code").

b.    *2007–2010 income tax*

For the 2007–2010 years, which are complicated by the IRS's

mirrored modules, the government seeks separate but overlapping liabilities

against the Aguinaldos for unpaid income-tax assessments and related penalties.

*See* ECF No. 135-1 (PageID.928–29).  Those liabilities are "overlapping" in the

sense that the government will "appl[y] any amount paid by either Mr. Aguinaldo

or Mrs. Aguinaldo to the module [balances] of both Defendants."  *Id.*

(PageID.900).

In support of its request for summary judgment on the alleged tax

debts for 2007, the government produces a Form 4340 showing an initial

assessment against Mr. Aguinaldo of $5,468.00, along with accrued interest,

penalties, and subtracted payments and credits, resulting in a total balance of

$489.74 as of September 15, 2020.  ECF No. 135-7 (PageID.986–92).  That

balance was later updated to $534.75, as reflected by the June 8, 2022 IDRS

Report.  ECF No. 135-13 (PageID.1214).  Likewise, for Mrs. Aguinaldo, the

government produces a Form 4340 showing an initial assessment of $5,468.00,

along with accrued interest, penalties, and subtracted payments and credits,

resulting in a total balance of $406.34 as of September 15, 2020.  ECF No. 135-8

(PageID.1016–22).  That balance was later updated to $447.10, as reflected by the

June 8, 2022 IDRS Report.  ECF No. 135-14 (PageID.1239).  The government also

provides a declaration from IRS Officer Lim supporting the accuracy of the

$534.75 and $447.10 debts, ECF No. 135-4, ¶ 12 (PageID.966), and regarding how

the innocent-spouse petition affected the interest calculations for Mrs. Aguinaldo's

debt, resulting in differing balances among joint filers, *see id.*, ¶ 25 (PageID.970).

Furthermore, both Mr. and Mrs. Aguinaldo admitted to owing their initial

assessments for the 2007 tax year.  *See* ECF No. 135-35, ¶¶ 3–5 (PageID.1516);

ECF No. 135-36, ¶¶ 3–5 (PageID.1552).

Although the 2007 tax year is more than ten years before the

government filed this case on October 9, 2020, the ten-year statute of limitations

for collections, 26 U.S.C. § 6502(a)(1), does not preclude liability for the 2007 tax

debts because this court "proceeding beg[a]n . . . within 10 years after the

*assessment* of the tax," *id.* (emphasis added).  Specifically, the Aguinaldos' income

taxes for the 2007 tax year were assessed on November 5, 2012, *see* ECF No. 135-

8 (PageID.1017), less than ten years before this case was filed.

The evidence of income-tax debts for 2008 is similar to the evidence

for the 2007 debts but with a notable quirk relating to the statute of limitations.

The government produces evidence demonstrating that income taxes for 2008 were

initially assessed against the Aguinaldos on November 30, 2009.  *See* ECF No.

135-7 (PageID.994); ECF No. 135-8 (PageID.1024).  That date is more than ten

years from the filing date of this case, October 9, 2020.  But the government also

produces evidence—and cites to relevant law—demonstrating that the statute of limitations was tolled *with respect to Mrs. Aguinaldo* due to her petition for innocent spouse relief.  The IRS began processing the petition on December 11, 2013, *see* ECF No. 135-8 (PageID.1019), and denied the petition on December 12, 2014, *see id.* (PageID.1020).  *See also* Lim Decl., ECF No. 135-4, ¶ 24 (PageID.970).  The statute of limitations was tolled during that 366-day period, and also for an additional 60 days by statute, and thus for a total of 426 days, *see* 26 U.S.C. § 6015(e)(1)(B)(i), (e)(2).  *See also* Lim Decl., ECF No. 135-4, ¶ 25 (PageID.970).  The 426 days of tolling enables the government to pursue liability against Mrs. Aguinaldo for the unpaid November 30, 2009 tax assessment.[4]

As for the amount of Mrs. Aguinaldo's 2008 tax debt, the government produces a Form 4340 showing an initial assessment of $25,010.00, along with accrued interest, penalties, and subtracted payments and credits, resulting in a total balance of $36,116.39 as of September 15, 2020.  ECF No. 135-8 (PageID.1023–30).  Also included in that total balance is a June 13, 2011 additional assessment of $4,400 in income taxes for the 2008 tax year.  *Id.* (PageID.1025).  That balance was later updated to $39,963.92, as reflected by the June 8, 2022 IDRS Report.  ECF No. 135-14 (PageID.1242).

---

[4] There are 3,966 days between October 9, 2020, and November 11, 2009.  Subtracting 426 days results in 3,540 days—a period less than 10 years (3,650 days, or 3,652 days accounting for leap years).

Regarding Mr. Aguinaldo, the ten-year statute of limitations was not tolled with respect to his initial income-tax assessment for 2008 (again, dated November 30, 2009), leaving that assessment and the related interest and penalties uncollectable.  *See* ECF No. 135-1 (PageID.901–02) (government admitting that "the statute of limitations to collect the unpaid tax liabilities reported on [the Aguinaldos'] 2008 return expired with respect to Mr. Aguinaldo").  But on June 13, 2011, Mr. Aguinaldo was assessed the same $4,400 in additional income taxes as Mrs. Aguinaldo, an assessment for the 2008 tax year that is collectable under the ten-year statute of limitations given the assessment date.  *See* ECF No. 135-7 (PageID.995) (Form 4340 showing additional assessment).  Through the June 8, 2022 IDRS Report, the government demonstrates an updated balance, including interest and penalties, of $9,645.51.  ECF No. 135-13 (PageID.1217).

The government provides a declaration from IRS Officer Lim supporting the accuracy of the $9,645.51 and $39,963.92 debts for Mr. and Mrs. Aguinaldo, respectively.  ECF No. 135-4, ¶ 12 (PageID.966).  Further, Mr. Aguinaldo admitted to owing the additional assessment for the 2008 tax year, *see* ECF No. 135-35, ¶¶ 8–11 (PageID.1517), while Mrs. Aguinaldo admitted to owing the additional assessment and the initial assessment for 2008, *see* ECF No. 135-36, ¶¶ 8–14 (PageID.1552–53).

Given the statute-of-limitations quirk for the 2008 tax year, the government is seeking "overlapping" liabilities only with respect to the $4,400 additional assessment (and any related interest).  *See* ECF No. 135-1 (PageID.901–02).  In effect, any payment made by Mr. Aguinaldo towards his 2008 income-tax debt would be applied towards Mrs. Aguinaldo's debt from the additional assessment, but not to her debt from the initial assessment.

There is no statute-of-limitations quirk for the 2009 tax year—the income taxes for that year were assessed against the Aguinaldos on November 15, 2010, less than ten years before this case was filed.  *See* ECF No. 135-7 (PageID.1002).  For 2009, the government produces a Form 4340 showing an initial assessment against Mr. Aguinaldo for $15,933.00 in income tax, along with accrued interest, penalties, and subtracted payments and credits, resulting in a total balance of $21,044.71 as of September 15, 2020.  *Id.* (PageID.1001–08).  That balance was later updated to $22,978.59, as reflected by the June 8, 2022 IDRS Report.  ECF No. 135-13 (PageID.1219).  Likewise, for Mrs. Aguinaldo, the government produces a Form 4340 showing an initial assessment of $15,933.00, along with accrued interest, penalties, and subtracted payments and credits, resulting in a total balance of $20,833.90 as of September 15, 2020.  ECF No. 135-8 (PageID.1031–38).  That balance was later updated to $22,978.59, as reflected by the June 8, 2022 IDRS Report.  ECF No. 135-14 (PageID.1246).  The government

also provides a declaration from IRS Officer Lim supporting the accuracy of the $22,978.59 debts.  ECF No. 135-4, ¶ 12 (PageID.966).  Furthermore, both Mr. and Mrs. Aguinaldo admitted to owing their initial assessments for the 2009 tax year.  *See* ECF No. 135-35, ¶¶ 14–15 (PageID.1518); ECF No. 135-36, ¶¶ 17–18 (PageID.1554).

The statute of limitations does not preclude liability for the 2010 income-tax debts, either, as the income taxes for that year were assessed against the Aguinaldos on July 9, 2012, less than ten years before this case was filed.  *See* ECF No. 135-7 (PageID.1010).  For 2010, the government produces a Form 4340 showing the initial assessment against Mr. Aguinaldo of $50,215.00 in income tax, along with accrued interest, penalties, and subtracted credits, resulting in a total balance of $89,010.11 as of September 15, 2020.  *Id.* (PageID.1009–15).  That balance was later updated to $97,189.57, as reflected by the June 8, 2022 IDRS Report.  ECF No. 135-13 (PageID.1222).  For Mrs. Aguinaldo, the government produces a Form 4340 showing an initial assessment of $50,215.00, along with accrued interest, penalties, and subtracted credits, resulting in a total of $88.303.15 as of September 15, 2020.  ECF No. 135-8 (PageID.1039–44).  That balance was later updated to $97,160.08, as reflected by the June 8, 2022 IDRS Report.  ECF No. 135-14 (PageID.1249).  The government provides a declaration from IRS Officer Lim regarding the accuracy of the $97,189.57 and $97,160.08 debts, ECF

No. 135-4, ¶ 12 (PageID.966).  Both Mr. and Mrs. Aguinaldo admitted to owing

their initial assessments for the 2010 tax year.  *See* ECF No. 135-35, ¶¶ 18–19

(PageID.1519); ECF No. 135-36, ¶¶ 21–23 (PageID.1555).

      In sum, the government's evidence of income-tax debts for 2007

through 2010—which includes Form 4340 assessments that are entitled to a

presumption of correctness—is sufficient to satisfy its initial burden of proving the

amounts owed and that the government gave requisite notice of the amounts owed

to the Aguinaldos.  The Aguinaldos have failed to provide any evidence rebutting

the government's initial showing.  *See* ECF No. 153.  Their general denials and

conclusory assertions are insufficient.  There is thus no genuine issue of material

fact as to the Aguinaldos' income-tax liabilities for 2007–2010:  Mr. Aguinaldo is

liable for a total of $130,348.42 for those years, and Mrs. Aguinaldo is liable for a

total of $160,549.69, with the overlapping liabilities noted above.  Those totals

may be supplemented with interest and statutory additions as permitted by law

from June 8, 2022, until paid.

      The court briefly address a few of the Aguinaldos' matter-of-law

arguments against income-tax liability (including for the years 2013 and 2014).

The Aguinaldos generally argue that "tax liability 'must be clearly and plainly laid'

in statute, not implied," and that the tax liabilities alleged in this case are not clear

or plain given that "Title 26 has not been enacted into positive law."  ECF No. 153,

¶¶ 21, 26–27 (PageID.1743) (citing *Spreckels Sugar Ref. Co. v. McClain*, 192 U.S. 397, 416 (1904)).  But those arguments have been repeatedly rejected by courts in the Ninth Circuit.[5]  *See, e.g.*, *Ryan v. Bilby*, 764 F.2d 1325, 1328 (9th Cir. 1985) ("[Appellant's] primary contention on appeal is that, as Congress has never enacted Title 26 of the United States Code into positive law, the defendants violated his constitutional rights by attempting to enforce it. . . .  This contention is frivolous.  Congress's failure to enact a title into positive law has only evidentiary significance and does not render the underlying enactment invalid or unenforceable. . . .  Like it or not, the Internal Revenue Code is the law, and the defendants did not violate [appellant's] rights by enforcing it." (citation and footnote omitted)).

---

[5] Relatedly, the Aguinaldos appear to conflate federal regulations and federal statutes in terms of their respective publication requirements.  *See* ECF No. 153, ¶ 15 (PageID.1741–42) ("Affiants sincerely believe that the Federal Register Act . . . requires any executive-agency statute (such as the 'Internal Revenue Code' found at Title 26 USC) to have a substantive regulation published in the Federal Register for such statute to have 'general applicability and legal effect,' or 'impose a penalty,' i.e., be enforceable, against members of the general public."). To the extent the Aguinaldos argue that the Internal Revenue Code is not enforceable because it lacks an implementing regulation published by the proper administrative procedures, that argument has no basis in the law.  *See United States v. Hicks*, 947 F.2d 1356, 1360 (9th Cir. 1991) ("It is the tax code itself, without reference to regulations, that imposes the duty to file a tax return."); *Hudson v. United States*, 766 F.2d 1288, 1291 (9th Cir. 1985) (analyzing frivolous-return penalty under 26 U.S.C. § 6702) ("Guidelines were unnecessary to give appellant notice that his actions violated the law.  '[T]he assessment of this civil penalty [against him] is only the direct application of the plain terms of the statute supported by unambiguous legislative history.'" (quoting *Kahn v. United States*, 753 F.2d 1208, 1223 n.8 (3d Cir. 1985))).

Courts in the Ninth Circuit have also rejected the Aguinaldos'
argument that "compensation for personal services" is not taxable income under
the Internal Revenue Code, ECF No. 153, ¶¶ 32–34 (PageID.1745). *See, e.g.*,
*Kochansky v. Comm'r*, 92 F.3d 957, 959 (9th Cir. 1996) ("That Kochansky's fee
was contingent upon the successful outcome of the McNary litigation does not
change the fact that, when the fee materialized, it was undisputed compensation for
Kochansky's personal services. . . . [I]t was taxable to Kochansky."); *Wilcox v.
Comm'r*, 848 F.2d 1007, 1008 (9th Cir. 1988) ("[W]ages are income.").[6]

Because there are no genuine issues of material fact as to the
Aguinaldos' income-tax liabilities, and because there are no legal principles
precluding liability as a matter of law, the court grants summary judgment in favor
of the government on its claims to reduce to judgment income-tax assessments and
related penalties imposed against the Aguinaldos.

## 2. *Employment- and Unemployment-Tax Assessments, and Related Penalties*

The government requests summary judgment on its claims to reduce
to judgment unpaid employment- and unemployment-tax assessments, and related
penalties, imposed against Mr. Aguinaldo beginning in the third quarter of 2007
and ending in the fourth quarter of 2011.  ECF No. 135-1 (PageID.918–20).

---

[6] The court has reviewed the remainder of the arguments in the Aguinaldos' Opposition, ECF No. 153, and does not find them persuasive.

During those periods, Mr. Aguinaldo operated a business, "Dynamic Interiors," as a sole proprietorship.  ECF No. 135-35, ¶ 28 (PageID.1520).

Under Hawaii law, a sole proprietorship is a "form of business in which one person owns all the assets of the business in contrast to a partnership, trust or corporation." *Credit Assocs. of Maui, Ltd. v. Carlbom*, 98 Haw. 462, 465, 50 P.3d 431, 434 (Ct. App. 2002) (quoting Black's Law Dictionary 1392 (6th ed. 1990)).  "[A] sole proprietorship has no legal identity apart from its owner," and the owner is personally liable for the debts of the sole proprietorship.  *Id.* at 465– 66, 50 P.3d at 434–35.

A sole proprietorship can employ the services of individuals other than the owner.  *See, e.g.*, *C & W Const. Co. v. Bhd. of Carpenters & Joiners of Am., Loc. 745, AFL-CIO*, 687 F. Supp. 1453, 1456–57 (D. Haw. 1988).  It can thus qualify as an "employer" for purposes of employment tax in the Internal Revenue Code if at least one individual other than the owner performs any service, of whatever nature, on its behalf in exchange for remuneration.  *See* 26 U.S.C. § 3121(b) (listing exceptions); *cf. Littriello v. United States*, 484 F.3d 372, 375 (6th Cir. 2007) (describing pass-through taxation of sole proprietorships, where "a single individual owns all the assets, is liable for all debts, and operates in an individual capacity [and] is also taxed only once").

From the third quarter of 2007 until the fourth quarter of 2011, Mr. Aguinaldo (i.e., Dynamic Interiors) employed the services of other individuals, making him an employer under the Internal Revenue Code. *See* ECF Nos. 135-22 through 135-28 ("Employer's Quarterly Federal Tax Return[s]" for the relevant quarters, each of which reports "income tax withheld from wages, tips, and other compensation"[7]); *see also* ECF No. 135-35, ¶¶ 28–127 (PageID.1520–39) (Mr. Aguinaldo admitting that the aforementioned Employer's Quarterly Federal Tax Returns are true and correct copies of the returns he filed as the sole proprietor of Dynamic Interiors).

As an employer under the Internal Revenue Code, Mr. Aguinaldo was required to remit employment taxes on a quarterly basis. *See generally United States v. Vacante*, 717 F. Supp. 2d 992, 993–1015 (E.D. Cal. 2010) (analyzing employment taxes allegedly owed by sole proprietor). Specifically, Mr. Aguinaldo was required to withhold income, Social Security, and Medicare taxes from his employees' wages and to hold those taxes in trust until they were remitted to the

---

[7] The return for the fourth quarter of 2011, ECF No. 135-28, was not filed by Mr. Aguinaldo. It was instead filed by IRS Officer Lim pursuant to the IRS's authority under 26 U.S.C. § 6020, given Mr. Aguinaldo's failure to file an employer's tax return for that quarter. *See* Lim Decl., ECF No. 135-4, ¶ 29 (PageID.971–72) (citing 26 U.S.C. § 6020(b), which provides that "[i]f any person fails to make any return required by any internal revenue law . . . , the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise," and that "[a]ny return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes").

IRS.  *See Oppliger v. United States*, 637 F.3d 889, 892 (8th Cir. 2011) (citing 26

U.S.C. §§ 3101, 3102(a), 3102(b), 3402, 3403, and 7501); *United States v. Smith*,

353 F. App'x 869, 871 n.1 (4th Cir. 2009) (per curiam) (defining "employment

taxes"); *Vacante*, 717 F. Supp. 2d at 1016.

Mr. Aguinaldo was also required to pay "unemployment taxes" on a

yearly basis—unemployment taxes are "non-trust fund" taxes imposed directly on

the employer pursuant to the Federal Unemployment Tax Act ("FUTA"), 26

U.S.C. § 3301 et seq.  *See Idaho Ambucare Ctr., Inc. v. United States*, 57 F.3d 752,

754 (9th Cir. 1995) ("Section[] . . . 3301 of the Internal Revenue Code impose[s]

. . . FUTA (unemployment) taxes on employers for wages paid to their

employees."); *Q.E.D., Inc. v. United States*, 55 Fed. Cl. 140, 143 n.9 (2003)

(explaining "'non-trust fund' employment taxes," including "taxes that are based

on amounts of wages imposed on employers . . . by [FUTA]").

The government claims that Mr. Aguinaldo, as the sole proprietor of

Dynamic Interiors, failed to pay employment and unemployment taxes beginning

in the third quarter of 2007 and until the fourth quarter of 2011.  In support of its

request for summary judgment on the employment-taxes claim, the government

produces Forms 4340 for each of the eighteen relevant quarters that show initial

assessments of employment taxes, along with accrued interest, penalties, and

subtracted credits and payments.[8]  *See* ECF No. 135-11.  The outstanding balances for each of those eighteen assessments were updated to the following, as reflected by the June 8, 2022 IDRS Report: $15,758.10; $6,911.04; $26,099.23; $21,983.79; $17,140.37; $11,292.71; $14,198.48; $15,866.41; $30,772.53; $36,700.34; $43,635.31; $57,780.95; $35,607.98; $12,802.07; $49.84; $1,764.24; $10,501.21; and $392.27.  ECF No. 135-15 (PageID.1252–98).  The government provides a declaration from IRS Officer Lim supporting the accuracy of those quarterly debts—which total $359,256.87, ECF No. 135-4, ¶ 15 (PageID.967–68)—and Mr. Aguinaldo admitted to owing the initial assessments of employment taxes for each of the eighteen quarters, *see* ECF No. 135-35, ¶¶ 28–127 (PageID.1520–39).

In support of its request for summary judgment on the unemployment-taxes claim, the government produces Forms 4340 for the years 2009–2011 showing initial assessments of unemployment taxes, along with accrued interest, penalties, and subtracted payments.[9]  *See* ECF No. 135-12 (PageID.1200–13).  The

---

[8] Those eighteen initial assessments of employment taxes were all made less than ten years before the government filed this case on October 9, 2020, making them actionable under the ten-year statute of limitations, 26 U.S.C. § 6502(a)(1).  *See* ECF No. 135-11 (PageID.1110–92).

[9] The three initial assessments of unemployment taxes were made less than ten years before the government filed this case on October 9, 2020, making them actionable under the ten-year statute of limitations, 26 U.S.C. § 6502(a)(1).  *See* ECF No. 135-12 (PageID.1200–10).  The government is not seeking to reduce to judgment unemployment taxes allegedly owed for years before 2009.  *Compare* ECF No. 135-1 (PageID.919–20), *with* ECF No. 110, ¶¶ 67–73 (PageID.683–86) (Third Amended Complaint).

outstanding balances for each of those three assessments were updated to the following, as reflected by the June 8, 2022 IDRS Report: $752.82; $1,272.77; and $6,695.72.  ECF No. 135-15 (PageID.1300–05).  The government provides a declaration from IRS Officer Lim supporting the accuracy of those yearly debts— which total $8,721.31, ECF No. 135-4, ¶ 16 (PageID.968)—and Mr. Aguinaldo admitted to owing the initial assessments of unemployment taxes for 2009–2011, *see* ECF No. 135-35, ¶¶ 133–48 (PageID.1540–43).

The government's evidence of employment- and unemployment-tax debts for the relevant periods between the third quarter of 2007 and the fourth quarter of 2011—including Form 4340 assessments that are entitled to a presumption of correctness—is sufficient to satisfy its initial burden of proving the amounts owed and that the government gave requisite notice of the amounts owed to Mr. Aguinaldo.  Mr. Aguinaldo attempts to rebut that presumption by asserting that any services performed by other individuals on behalf of Dynamic Interiors were performed outside the United States and that, as a result, Dynamic Interiors never "had any 'employees' engaged in [taxable] 'employment'" under 26 U.S.C. §§ 3121, 3306.  ECF No. 153, ¶¶ 43–44 (PageID.1748).  But Mr. Aguinaldo does not support that general assertion with any specific evidence, making it too conclusory to defeat summary judgment.

Accordingly, there is no genuine issue of material fact as to the employment- and unemployment-tax liabilities for the relevant periods between the third quarter of 2007 and the fourth quarter of 2011—Mr. Aguinaldo is liable for a total of $359,256.87 in unremitted employment taxes and a total of $8,721.31 in unpaid unemployment taxes. *See Carlbom*, 98 Haw. at 465, 50 P.3d at 434 ("The sole proprietor is solely liable for all the debts of the business."). Those totals may be supplemented with interest and statutory additions as permitted by law from June 8, 2022, until paid. The court thus grants summary judgment in favor of the government on its claims to reduce to judgment employment- and unemployment-tax assessments, and related penalties, imposed against Mr. Aguinaldo.

3.   ***Assessments of Trust Fund Recovery Penalties for Unremitted Employment Taxes***

The government requests summary judgment on its claim to reduce to judgment unpaid trust fund recovery penalties ("TFRPs") imposed against Mr. Aguinaldo. ECF No. 135-1 (PageID.912–17). Those penalties concern employment-tax debts allegedly held by Dynamic Interiors LLC, *see id.*, a single-member-managed limited liability company that Mr. Aguinaldo formed in November 2011 using the same operating address used by his sole proprietorship Dynamic Interiors, *see* https://hbe.ehawaii.gov/documents/business.html?fileNumber=90909C5 (last visited October 6, 2022). More specifically, those penalties concern Dynamic Interiors LLC's alleged failure to remit trust-fund

25

employment taxes for the following five tax periods: quarters ending on March 31,

2012; June 30, 2012; December 31, 2012; March 31, 2013; and June 30, 2013 (the

"TFRP quarters").  *See* ECF No. 135-1 (PageID.912–17).

Similar to a sole proprietorship, a single-member limited liability

company can qualify as an "employer" for purposes of employment tax in the

Internal Revenue Code if at least one individual performs any service, of whatever

nature, on its behalf in exchange for renumeration.  *See* 26 U.S.C. § 3121(b).  If the

limited liability company does qualify as an employer, it must withhold

employment taxes—income, Social Security, and Medicare taxes—from its

employees' wages and hold those taxes in trust until they are remitted to the IRS.

*See Oppliger*, 637 F.3d at 892 (citing 26 U.S.C. §§ 3101, 3102(a), 3102(b), 3402,

3403, and 7501); *Hampton Software Dev., LLC v. Comm'r of Internal Revenue*,

115 T.C.M. (CCH) 1490 (T.C. 2018) (mem.) (sustaining employment-tax

obligations against limited liability company).

However, unlike with a sole proprietor, Hawaii law specifies that a

single member is not liable for tax debts and obligations incurred by the limited

liability company—the company itself is separately liable for those tax debts and

obligations.  *See* Haw. Rev. Stat. § 428-303(a); *Garcia v. Fernandez*, 2020 WL

2991784, *2 (Haw. Ct. App. 2020) (summary disposition order) ("Unlike a sole

proprietorship, a sole member limited liability company is a distinct legal entity

26

that is separate from its owner . . . ." (quoting and citing *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007))).[10]

Dynamic Interiors LLC employed individuals during the TFRP quarters. *See* ECF No. 135-35, ¶ 162 (PageID.1545) (Mr. Aguinaldo admitting that Dynamic Interiors LLC did not fully pay employment taxes withheld from employees' wages during the relevant period); ECF No. 135-10 (PageID.1085). And the government claims that Dynamic Interiors LLC failed to remit employment taxes during the TFRP quarters. ECF No. 135-1 (PageID.916–17).

The government seeks to collect the unremitted amounts from Mr. Aguinaldo, *see id.*, who would not normally be liable for the tax debts of Dynamic Interiors LLC due to the limited liability shield. The government does so using debt-equivalent penalties under 26 U.S.C. § 6672, so-called "trust fund recovery penalties." Section 6672 permits a TFRP against persons who are responsible for collecting and remitting a company's trust-fund employment taxes, and who willfully fail to do so. *See id.*; *Davis v. United States*, 961 F.2d 867, 869–70 (9th Cir. 1992). A TFRP is "equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." 26 U.S.C. § 6672(a). But before

---

[10] There is an exception permitting member liability for unremitted employment taxes when the sole member of a limited liability company fails to designate the company as an "association" under Treasury Regulations §§ 301.7701–3(a) and (c), resulting in the company being "disregarded" and the member being treated as a sole proprietor. *See Littriello*, 484 F.3d at 375. The government does not press that exception in this case, however.

the TFRP can be collected from a responsible person, the responsible person must be given notice of the TFRP through an IRS assessment. *See id.* §  6672(b)(1).

A "responsible person," for purposes of § 6672, includes "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." *Id.* § 6671(b).  A "responsible person" has "the authority required to exercise significant control over the corporation's financial affairs, regardless of whether he exercised such control in fact." *Purcell v. United States*, 1 F.3d 932, 937 (9th Cir. 1993).  Some courts apply a factor test when determining a "responsible person," the most critical factor being "significant control over the enterprise's finances." *United States v. Jones*, 33 F.3d 1137, 1140 (9th Cir. 1994) (quoting *Hochstein v. United States*, 900 F.2d 543, 547 (2d Cir. 1990)).

"[T]he term 'willfulness' for purposes of failing to pay over withholding taxes [means] a 'voluntary, conscious and intentional act to prefer other creditors over the United States.'" *Phillips v. IRS*, 73 F.3d 939, 942 (9th Cir. 1996) (quoting *Klotz v. United States*, 602 F.2d 920, 923 (9th Cir. 1979)).  "No bad motive need be proved." *Id.*  "In the case of individuals who are responsible persons both before and after withholding tax liability accrues, . . . there is a duty to use unencumbered funds acquired after the withholding obligation becomes

28

payable to satisfy that obligation; failure to do so when there is knowledge of the liability . . . constitutes willfulness." *Davis*, 961 F.2d at 875–78 (quoting and adopting the holding in *Mazo v. United States*, 591 F.2d 1151, 1157 (5th Cir. 1979)).

In support of its request for summary judgment on its TFRP claim, the government produces Forms 4340 for each of the five TFRP quarters showing initial assessments of TFRPs against Mr. Aguinaldo in the amount of Dynamic Interiors LLC's unremitted employment taxes.[11]  *See* ECF No. 135-10 (PageID.1084–1109).  Those five assessments include accrued interest, penalties (other than under § 6672), and subtracted credits and payments.  *See id.*  The outstanding balances for those five assessments were updated to the following, as reflected by the June 8, 2022 IDRS Report:  $358.25; $13,323.60; $2,390.89; $4,939.90; and $15,230.47.  ECF No. 135-13 (PageID.1229–37).  The government provides a declaration from IRS Officer Lim supporting the accuracy of those quarterly debts—which total $36,243.11, ECF No. 135-4, ¶ 14 (PageID.967)—and Mr. Aguinaldo admitted that Dynamic Interiors LLC was not fully remitting trust-fund employment taxes during the TFRP quarters, *see* ECF No. 135-35, ¶ 162 (PageID.1545).  That evidence is sufficient to satisfy the government's initial

---

[11] The initial assessments of TFRPs were made less than ten years before the government filed this case on October 9, 2020, making them actionable under the ten-year statute of limitations, 26 U.S.C. § 6502(a)(1).  *See* ECF No. 135-10 (PageID.1084–1109).

burden of proving the amount of employment taxes owed by Dynamic Interiors LLC and that the government gave Mr. Aguinaldo notice of the debt-equivalent TFRPs.  Mr. Aguinaldo offers no rebuttal to the government's showing.

The government also provides evidence and argument concerning Mr. Aguinaldo's authority over Dynamic Interiors LLC's operations and his ability to control its financial policy.  *See* CSF, ECF No. 135-3, ¶¶ 12–20 (PageID.955–56); ECF No. 135-1 (PageID.916–17).  The court finds the government's showing sufficient to establish that Mr. Aguinaldo was a "responsible person" who willfully failed to remit trust-fund employment taxes during the TFRP quarters, on behalf of Dynamic Interiors LLC.  Two notable pieces of evidence supporting that finding are, first, that Mr. Aguinaldo was the only member and manager of Dynamic Interiors LLC during the TFRP quarters, *see* ECF No. 135-35, ¶¶ 149–51 (PageID.1543),[12] and second, that he had authority over the LLC's financial policy during the TFRP quarters—including over decisions to pay or not to pay creditors—and admitted that the LLC misappropriated trust-fund taxes during those quarters, *see id.*, ¶¶ 153, 162–63 (PageID.1544–45).

In sum, there is no genuine issue of material fact as to whether Dynamic Interiors LLC failed to remit employment taxes for the TFRP quarters.

---

[12] *See also* https://hbe.ehawaii.gov/documents/business.html?fileNumber=90909C5 (last visited October 6, 2022).

Nor is there a genuine issue of material fact as to whether Mr. Aguinaldo is liable for TFRPs in amounts equivalent to the employment-tax debts, considering his role in and authority over the LLC.  Mr. Aguinaldo is thus liable for $36,243.11 in TFRPs.  That total may be supplemented with interest and statutory additions as permitted by law from June 8, 2022, until paid.  The court thus grants summary judgment in favor of the government on its claim to reduce to judgment unpaid TFRPs imposed against Mr. Aguinaldo.

**B.     Foreclose Tax Liens on Real Property**

Lastly, the government requests summary judgment on its claim to foreclose its federal tax liens on the Aguinaldos' real property.  ECF No. 135-1 (PageID.926–28).  The Aguinaldos own real property located at 1633 Kalaepaa Drive, Honolulu, Hawaii 96819 ("Kalaepaa property"), via warranty deed as husband and wife.  *See* ECF No. 135-48 (PageID.1621–30) (warranty deed); *see also* ECF No. 135-43 (PageID.1610) (Mr. Aguinaldo's March 8, 2022 response to the government's first set of interrogatories, wherein he lists "1633 Kalaepaa Drive" in the header next to his name and phone number).

For each of the claimed tax liabilities discussed above—and on which the court grants summary judgment for the government—a lien arose in favor of the government upon the Kalaepaa property as soon as the government assessed those tax liabilities.  *See* 26 U.S.C. §§ 6321, 6322; *see also United States v. Nat'l*

*Bank of Com.*, 472 U.S. 713, 719–20 (1985) ("The statutory language 'all property and rights to property,' appearing in § 6321 . . . is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have."). As soon as the liens arose, the government was entitled to file a foreclosure action in this court pursuant to 26 U.S.C. § 7403.  And if certain procedural requirements have been met, the court can adjudicate the foreclosure claim, order the sale of the Kalaepaa property, and distribute the proceeds towards the tax liabilities and to other interest-holding parties.  *See id.*

Two procedural requirements in § 7403 are that "[a]ll persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto," and that "the parties [must] have been duly notified of the action."  *Id.* § 7403 (b), (c).  The government satisfied the first requirement by naming as Defendants all entities that might possibly claim an interest in the Kalaepaa property.  *See* ECF No. 110, ¶¶ 7–20 (PageID.661–64) (the government naming, among twelve other entity-Defendants, "U.S. Bank, N.A.," and "Pacific B. of Trade Inc.," because they "may claim an interest in the Kalaepaa Property"); *see also* ECF No. 128 (the government stipulating with certain entity-Defendants regarding priority of interests in the Kalaepaa Property, and thereafter dismissing the stipulating entity-Defendants).

But in its Motion for Summary Judgment, the government has not addressed—much less proven—whether it satisfied the second procedural requirement that it "duly notif[y]" all parties of its foreclosure efforts. Four of the entity-Defendants—Allied Building Products, Portfolio Recovery Associates LLC, Midland Funding LLC, and the Law Office of Alex M. Sonson—have not yet appeared in this case and have only recently been served with a copy of the Third Amended Complaint. Three of those Defendants were served with a copy of the Third Amended Complaint on August 24, 2022, *see* ECF No. 155, almost three months after the government filed its Motion for Summary Judgment, and a week-and-a-half before responses to the Motion were due under Local Rule 7.2. The fourth of those entity-Defendants was served even later on September 2, 2022. *See* ECF No. 156. Moreover, it appears the government has not served a copy of its Motion on those four Defendants, *see* ECF No. 135 (PageID.892), making it even more doubtful whether those Defendants are aware of the government's efforts to obtain a summary-judgment foreclosure of the Kalaepaa property.

Even if those four Defendants are unlikely to have substantive objections to the government's foreclosure request, it is premature to grant foreclosure without giving those parties an opportunity to object or to otherwise apprise the court (and the government) of any interest they might have in the Kalaepaa property. *See United States v. John*, 2020 WL 5536830, at *5 (E.D.N.Y.

33

Mar. 2, 2020) ("This Court is not satisfied that all the interested parties have been duly notified of this action because not all Defendants were properly served with process as discussed below. . . .  Even if all Defendants had actual or constructive notice of this action, this Court would not have the jurisdiction over all Defendants to fully adjudicate or resolve the Government's claims unless service of process was properly made.  At this time, it would be premature to resolve the issues as to liability or issue the final order of foreclosure and judicial sale." (citations omitted)), *report and recommendation adopted in relevant part*, 2020 WL 4915371 (E.D.N.Y. Aug. 21, 2020).

Given the facts outlined above—which, again, the government does not address in its Motion—the court finds that the government has not "duly notified" all parties of the foreclosure action, as required by 26 U.S.C. § 7403(c). The court thus denies the government's request for summary judgment on its foreclosure claim.  That denial is without prejudice to the government seeking foreclosure at a later time, after all procedural requirements in § 7403 have been satisfied.[13]

---

[13] The court understands that the dispositive and non-dispositive motions deadlines have passed, *see* ECF No. 148 (PageID.1720), and the court will allow the government to request to file a subsequent motion despite those deadlines.

# IV.  **CONCLUSION**

The government's Motion for Summary Judgment, ECF No. 135, is GRANTED in part and DENIED in part.  The Motion is GRANTED with respect to the government's claims to reduce to judgment unpaid tax assessments and related penalties against the Aguinaldos.  The court finds the following tax liabilities:

- For the combined income-tax years 2007, 2008, 2009, and 2010, Mr. and Mrs. Aguinaldo have separate but overlapping liabilities of $130,348.42 and $160,549.69, respectively, plus any interest and statutory additions as permitted by law from June 8, 2022, until paid.

- For the combined income-tax years 2013 and 2014, Mr. and Mrs. Aguinaldo are jointly and severally liable for $20,656.05, plus any interest and statutory additions as permitted by law from June 8, 2022, until paid.

- For the combined employment-tax quarters from the third quarter of 2007 until the fourth quarter of 2011, Mr. Aguinaldo is liable for $359,256.87, plus any interest and statutory additions as permitted by law from June 8, 2022, until paid.

- For the combined unemployment-tax years 2009, 2010, and 2011, Mr. Aguinaldo is liable for $8,721.31, plus any interest and statutory additions as permitted by law from June 8, 2022, until paid.

- For the combined employment-tax periods including the first, second, and fourth quarters of 2012, and the first and second quarters of 2013, Mr. Aguinaldo is liable for $36,243.11, plus any interest and statutory additions as permitted by law from June 8, 2022, until paid.

But the government's Motion is DENIED as to its claim to foreclose tax liens on the Aguinaldos' real property.  That denial is without prejudice.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 6, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Aguinaldo et al.*, Civ. No. 20-00434  JMS-KJM, Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment, ECF No. 135