IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,

Plaintiff,

v.

EDDIE VALLESTEROS AGUINALDO; IMELDA SEVILLEJA AGUINALDO; ET AL.,

Defendants.

CIV. NO. 20-00434 JMS-KJM

ORDER CLARIFYING IMELDA SEVILLEJA AGUINALDO'S INTEREST IN PROPERTY UPON THE DEATH OF EDDIE VALLESTEROS AGUINALDO

# ORDER CLARIFYING IMELDA SEVILLEJA AGUINALDO'S INTEREST IN PROPERTY UPON THE DEATH OF EDDIE VALLESTEROS AGUINALDO

## I. INTRODUCTION

In this long-running and procedurally complex case, the United States has sought to reduce various tax assessments against Eddie Vallesteros Aguinaldo ("Eddie") and Imelda Sevilleja Aguinaldo ("Imelda") (collectively, "the Aguinaldos") to judgment, and to foreclose on its federal tax liens against a Honolulu property owned by the Aguinaldos as tenants by the entirety ("Honolulu property"). The case is almost complete—the court reduced the tax assessments to judgment, entered an order of foreclosure against the Honolulu property, confirmed the sale of the Honolulu property by a court-appointed receiver, and approved the deposit of $362,918.29 with the court registry. *See* ECF Nos. 158,

237, 238, 251, and 262. Now, the United States has filed a Motion for disbursement of those funds. ECF No. 268 ("Motion").

Although disbursing funds after a judicial foreclosure is normally a straightforward procedure, there is a wrinkle in this case—Eddie died while this case was pending, prior to the court reducing to judgment the unpaid federal tax assessments and prior to the date that the court ordered foreclosure of the Honolulu property to satisfy that judgment. As the United States points out in its Motion, this raises a question as to whether the court can disburse Eddie's fifty percent share of the remaining sale proceeds, or whether—because title to the Honolulu property was held in tenancy by the entirety—Eddie's portion passed to Imelda upon his death (before the unpaid assessments were reduced to judgment).

Although perhaps inconsistent with the equities of this case, and even perhaps inconsistent with what might seem obvious at first glance, the court concludes that Eddie's interest in the Honolulu property was vested in Imelda at the time of his death, and thus is not subject to Eddie's creditors' claims. Although the unpaid assessments were properly reduced to judgment, this conclusion regarding Eddie's interest leaves an open question as to proper disbursement of the funds held by the court. In this circumstance, the United States has suggested that certain parties file supplemental briefing or a stipulation as to how the remaining proceeds should be distributed. *See* ECF No. 268-1 at PageID.3980–3981 n.5.

Before the parties do so, the court will hold a status conference with any party still claiming an interest in any of the remaining proceeds to discuss issues and requirements related to future disbursement. To be clear, Imelda must also appear. The status conference will be held by Zoom on **January 31, 2025 at 10:00 a.m.** Any such parties are to confirm their availability for that hearing (and receive sign-on details) by contacting this court's courtroom manager (email address: renee_honda@hid.uscourts.gov), and if all parties are not available at that date and time, a hearing will be rescheduled at an appropriate date forthwith. **If a party does not attend that status conference, the court will consider any potential claim to remaining funds to have been waived.**

## II. BACKGROUND

The Order assumes familiarity with the long convoluted procedural history of this case. The court, however, sets forth the following basic timeline for context:

| | |
|---|---|
| October 9, 2020: | United States files a complaint seeking to reduce tax assessments against the Aguinaldos to judgment. ECF No. 1. |
| February 2, 2022: | United States files a Third Amended Complaint seeking to reduce tax assessments against the Aguinaldos to judgment and foreclosure of its tax liens and sale of the Honolulu property to satisfy those liens. ECF No. 110. |
| April 26, 2022: | Various Defendants—other than the Aguinaldos—stipulate to the validity and priority of their interest in the Honolulu property. ECF No. 124. |

June 8, 2022: United States files a Motion for Summary Judgment seeking to reduce unpaid tax liens to judgment, and foreclosure on the Honolulu property. ECF No. 135.

October 2, 2022: Eddie dies. *See* ECF Nos. 163 & 164.

October 6, 2022: The court enters an order granting the United States' Motion for Summary Judgment in part, reducing to judgment unpaid federal tax assessments and penalties against Eddie and Imelda, but denying the foreclosure request without prejudice. ECF No. 158.

April 12, 2023: The court substitutes Imelda as Representative of the Estate of Eddie Aguinaldo as Defendant in place of decedent Eddie Aguinaldo pursuant to Federal Rule of Civil Procedure 25(a). ECF No. 208.

September 21, 2023: United States files a Motion for Summary Judgment seeking foreclosure of its federal tax liens on the Honolulu property. ECF No. 225.

November 2, 2023: The court grants the United States' motion to foreclose its federal tax liens on the Honolulu property, ECF No. 237, and appoints a receiver to conduct the sale, ECF No. 238.

July 31, 2024: The court confirms the court-appointed receiver's sale of the Honolulu property.[1] ECF No. 262.

October 3, 2024: The foreclosure sale is recorded, certain payments are made in accordance with the court's July 31, 2024 confirmation order, and the remaining funds

[1] On November 13, 2023, Imelda filed an appeal (9th Cir. App. No. 23-3841) of the court's order granting the United States' motion to foreclose its federal tax liens on the Honolulu property (although no stay of foreclosure proceedings was obtained). *See* ECF No. 237. This court determined that it retained jurisdiction to proceed with confirmation, pending that appeal, under an "aid in execution of judgment" exception to the divestiture rule. *See* ECF No. 261. Imelda's appeal of the foreclosure order remains pending in the Ninth Circuit.

($362,918.29) are deposited into the Court's Registry. ECF No. 267.

On October 15, 2024, the United States filed the instant Motion. ECF No. 268. On October 24, 2024, Defendant State of Hawaii, Department of Taxation filed a statement of position. ECF No. 270. Imelda filed a Response on November 27, 2024, ECF No. 273, and the United States filed a Reply on December 3, 2024. ECF No. 274.[2] The court rules on the Motion without a hearing pursuant to Local Rule 7.1(c).

## III. DISCUSSION

Under 26 U.S.C. § 7403, the United States may enforce a lien by filing a civil action and subject property in which a taxpayer "has any right, title, or interest, to the payment of such tax or liability." The determination of an individual's interest in the property is governed by state law, while the manner of enforcement of the lien is governed by federal law. *See, e.g., United States v. Kocher*, 468 F.2d 503, 506–07 (2d Cir. 1972); *United States v. Lothringer*, 2020 WL 4677406, at *11 (W.D. Tex. Aug. 11, 2020); *United States v. Nat. Bank of Comm.*, 472 U.S. 713, 722 (1985) ("In the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer

[2] On January 21, 2025, after full briefing, the court determined that—as with the confirmation proceedings—the court retains jurisdiction to proceed with ruling on the distribution matters despite the pending appeal of the foreclosure order. *See* ECF No. 281 (again applying the "aid in execution of judgment" exception to the divestiture rule regarding jurisdiction pending appeal).

had in the property.") (quoting *Aquilino v. United States*, 363 U.S. 509, 513 (1960)) (brackets and internal quotation marks omitted). Here, as stated above, the Aguinaldos held the Honolulu property as tenants by the entirety when Eddie died. *See* ECF No. 268-1 at PageID.3964; ECF No. 226-1 at PageID.2928.

"Hawaii recognizes the validity of tenancies by the entirety and affords such tenancies the protections that have come to serve as their hallmarks." *Sec. Pac. Bank Washington v. Chang*, 80 F.3d 1412, 1415 (9th Cir. 1996). In Hawaii, a "tenancy by the entirety is a unique form of ownership in which both spouses are jointly seized of property such that neither spouse can convey an interest alone nor can one spouse's creditor attach the property to satisfy a debt." *Traders Travel Int'l, Inc. v. Howser*, 69 Haw. 609, 613, 753 P.2d 244, 246 (1988). "The indivisibility of the estate, except by joint action of the spouses, is an indispensable feature of the tenancy by the entirety." *Sawada v. Endo*, 57 Haw. 608, 614, 561 P.2d 1291, 1296 (1977).

And as explained by many courts, when a couple holds property by the entirety and one spouse dies, the surviving spouse is liable for joint debts and the surviving spouse's own debts, but not the individual debts of the deceased spouse. *See. e.g., Morrison v. Potter*, 764 A.2d 234, 236–37 (D.C. 2000) (holding that "property subject to a tenancy by the entireties is liable for the spouses' joint debts" and, upon the death of one spouse, "for the individual debts of the surviving

co-tenant," but "is unreachable by creditors of one but not of both of the tenants"); *Evans v. Evans*, 290 Va. 176, 184, 772 S.E.2d 576, 580 (2015) ("[S]o long as the property remains held by them as tenants by the entirety, upon the death of one spouse, ownership of the property will pass to the other in fee simple outside the estate of the deceased spouse."); *Bakwin v. Mardirosian*, 467 Mass. 631, 636, 6 N.E.3d 1078, 1084 (2014) ("Additionally, each holder of a tenancy by the entirety has an indestructible right of survivorship. Should the debtor spouse die first, the debtor's attached interest is extinguished and the nondebtor spouse will take the property free of the creditor's attachment."); *United States v. Steinger*, 2010 WL 11505207, at *6 (S.D. Fla. Aug. 25, 2010) ("In other words, so long as property is cloaked with the protection afforded by the right of survivorship, a cotenant's death acts to extinguish his rights to the property and by operation of law vests the property in the surviving cotenant free of any liens."); *Dryden v. Est. of Gallucio*, 2007 WL 185467, at *4 n.24 (Del. Ch. Jan. 11, 2007) ("In addition, the assets held by husband and wife as tenants by the entireties will not be part of the estate of the first spouse to die and, thus, will not be available for that spouse's creditors even in death.") (citations omitted).[3]

[3] The United States agrees that this rule applies in Hawaii. As stated by the government in its Motion, "when a married couple hold real property as tenants by the entirety, and one spouse dies, the surviving spouse takes the entirety of the real property and the decedent spouse's creditors' claims no longer attach to the real property." ECF No. 268-1 at PageID.3969.

This rule is consistent with Internal Revenue Service Notice 2003-60, Collection Issues Related to Entireties Property (2003), 2003 WL 22100950. That publication, in a question-and-answer format, asks "Does the federal tax lien on [tenancy by the entirety] property survive the death of the taxpayer." It then answers:

> [I]f a taxpayer's interest in [a tenancy by the entirety] property is extinguished by law at the death of the taxpayer, then there is no longer an interest of the taxpayer to which the federal tax lien attaches. When a taxpayer dies, the surviving non-liable spouse takes the property unencumbered by the federal tax lien.

*Id.* at *1; *see also United States v. Cardaci*, 856 F.3d 267, 272 n.4 (3d Cir. 2017) (relying on Notice 2003-60 in determining that, when a delinquent-taxpayer spouse dies, the surviving non-liable spouse takes the property free of any federal tax lien); *United States v. Tyler*, 528 F. App'x 193, 199 (3d Cir. 2013) (same).

The United States makes two primary arguments as to why this rule should not apply here. First, the United States argues that because it filed an in rem action pursuant to 26 U.S.C. § 7403 before Eddie died, his death "should not disrupt this in rem proceeding or any party's claims to the Property." ECF No. 268-1 at PageID.3971. To support this argument, the United States asserts that jurisdiction over in rem property remains with the court until competing claims are resolved. *Id*. at PageID.3970. The United States also cites cases such as *United States v. Carl Cleve & Son, Inc*., 2019 WL 3975952 (S.D. Iowa June 19, 2019),

which rely on the general rule that once an in rem action is filed in federal court, the court retains exclusive jurisdiction over the in rem property.[4] But the fact that this court has exclusive jurisdiction over the Honolulu property does not address the underlying issue—whether Imelda received Eddie's interest upon death outside the reach of his creditors. That is, although the court agrees with the law cited by the United States, that law is simply not relevant to the question before the court.

Second, the United States claims that the Supreme Court of Hawaii has suggested that the doctrine of tenancy by the entirety may have an exception that could apply here. In discussing the doctrine, *In re Dean's Trust*, 47 Haw. 629, 645, 394 P.2d 432, 441 (1964), stated that "in the absence of evidence that steps were taken to collect the loan during the [deceased debtor spouse's] lifetime, we have no occasion to consider whether such collection might have been effected out of the [deceased debtor spouse's] share to any extent." From this language, the United States claims that "the Hawaii Supreme Court has indicated that the general rule may not be absolute." ECF No. 268-1 at PageID.3973. But any doubt as to potential limits placed on property held as tenants by the entirety was laid to rest by *Sawada*, 57 Haw. at 609, 561 P.2d at 1293.

---

[4] As explained by the Supreme Court, when "a court has custody of property, that is, proceedings in rem or quasi in rem . . . the state or federal court having custody of such property has exclusive jurisdiction to proceed." *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964). Here, an action under 26 U.S.C. § 7403 is an in rem proceeding. *See United States v. Rodgers*, 461 U.S. 677, 692–94 (1983).

In *Sawada*, Kokichi and Ume Endo conveyed tenancy by the entirety property to their sons, without consideration, and continued to live on the property, approximately six weeks after Kokichi had been sued for injuring Masako and Helen Sawada in an automobile accident. *Id*.[5] After the Sawadas obtained money judgments against Kokichi, they sued to set aside the conveyance of property, claiming it was a fraud to avoid a possible judgment. After a lengthy discussion of the doctrine of tenancy by the entirety, the Hawaii Supreme Court determined that "an estate by the entirety is not subject to the claims of the creditors of one of the spouses during their joint lives," and thus the conveyance to the Endo sons "was not in fraud of Kokichi Endo's judgment creditors." *Id*. at 617, 561 P.2d at 1297.[6] Given the breadth of the doctrine set forth in *Sawada*, the court believes that the dicta in *In Re Dean's Trust* cited by the United States is just that—dicta with no force of law. *Sawada* leads the court to conclude that upon Eddie's death, Imelda took possession of Eddie's interest free of any claim by Eddie's creditors.[7]

---

[5] Both sons were aware that their father had been involved in an automobile accident and that he carried no insurance. *Sawada*, 57 Haw. at 609, 561 P.2d at 1293.

[6] The court also noted an exception to this rule—"the creation of a tenancy by the entirety may not be used as a device to defraud existing creditors." *Id*. Here, the United States has not argued the applicability of this exception as there appears to be no basis for it.

[7] The United States also argues that equitable factors should override the tenancy-by-the-entirety principles discussed above because—by happenstance—Eddie's death occurred after it had filed its motion reducing the tax liens, and after the United States had agreed in good faith to several lengthy extensions of time due to the Aguinaldos' pro se status and for other reasons. *See* ECF No. 268-1 at PageID.3975–76. Further, it argues that one of the purposes of holding

(continued . . . )

## IV. CONCLUSION

The Motion includes a proposal as to how the funds deposited with the court should be distributed. But, the suggested distribution is based on an assumption rejected by this Order. *See* ECF No. 268–1 at PageID.3977 (arguing that "the first thing to do with the remaining proceeds which have been deposited into the Court's registry is to divide them equally to represent Eddie's and Imelda's one-half interests before determining how to distribute them amongst the various lienholders"). Given this landscape, as set forth earlier, the United States has suggested that certain parties file supplemental briefing or a stipulation as to how the remaining proceeds should be distributed. *See* ECF No. 268-1 at PageID.3980–3981 n.5.

Before the parties file supplemental briefing or a stipulation, however, the court will hold a status conference with any party still claiming an interest in

property in tenancy by the entirety—"protect[ing] family solidarity and protect[ing] the surviving spouse and family's residence"—would not be served by applying these legal principles because the Honolulu property has already been sold and the Aguinaldos should have had no expectation that it would not be sold. *Id*. at PageID.3976. But *Sawada* gave no indication that equitable factors could override a clear application of well-settled law. *Sawada* clearly held that "[t]he indivisibility of the estate, except by joint action of the spouses, is an indispensable feature of the tenancy by the entirely." *Sawada*, 57 Haw. at 614, 561 P.2d at 1296. And even if equitable factors could apply, the court would not override the legal principles here. There is no indication that the timing of Eddie's unfortunate death was anything but happenstance. Finally, the United States argues that—should the court apply these principles given Eddie's death—Imelda would not receive any proceeds because she still may owe other significant debts. *Id.* at PageID.3975 n.4. But, to be clear, the court has not considered, one way or the other, whether Imelda would or would not receive any of the sale proceeds upon completion of this distribution proceeding. The court is simply applying the law as required.

any of the remaining proceeds to discuss issues and requirements related to future disbursement. To be clear, Imelda Sevilleja Aguinaldo must also appear at that status conference. The conference will be held by Zoom on **January 31, 2025 at 10:00 a.m.** Any such parties are to confirm their availability for that hearing (and to receive sign-on details) by contacting this court's courtroom manager (email address: renee_honda@hid.uscourts.gov), and if all parties are not available at that date and time, a hearing will be rescheduled at an appropriate date forthwith. **If a party does not attend that status conference, the court will consider any potential claim to remaining funds to have been waived.**

IT IS SO ORDERED.

DATED: Honolulu, Hawaii: January 23, 2025.




/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge